**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-60070**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JOHN D. JACKSON, JR.,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**(1:93-CR-60-BrR)**
_____

March 7, 1996

Before BARKSDALE, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

John D. Jackson, Jr., challenges his sentence on two grounds, both of which are being raised for the first time on appeal. Not finding plain error, we **AFFIRM**.

I.

In November 1993, Jackson was indicted for conspiracy to possess with intent to distribute cocaine base and possession with intent to distribute cocaine base. He pleaded guilty to the conspiracy count in August 1994. The plea agreement provided, _inter alia_, that the Government would recommend that the court impose a sentence within the bottom half of the applicable

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

guideline range, inform it of the extent of Jackson's cooperation, and request that it consider that cooperation in determining his sentence.[1]   The agreement provided further that the Government reserved the right to move for downward departure pursuant to U.S.S.G. § 5K1.1.   After conducting a hearing in accordance with FED. R. CRIM. P. 11, the district court accepted Jackson's plea.

Prior to sentencing, and represented by new counsel, Jackson moved to withdraw his plea or, in the alternative, for specific performance.   He asserted in the motion that the Government had informed him that it intended to recommend a downward departure to 120 months imprisonment, in violation of its alleged promise in the plea agreement to recommend that he receive a maximum sentence of 10 years and "then by application of the guidelines ... be given credit for certain downward departures from the 120 months, depending upon his cooperation, acceptance of responsibility, relevant conduct, criminal history background, and other matters under said guidelines".

The district court conducted an evidentiary hearing on the motion immediately preceding sentencing.   It asked Jackson whether he would prefer to withdraw his guilty plea or to receive a

_____

[1]     The agreement provided also that "the maximum possible penalty that may be imposed is 10 years mandatory minimum imprisonment and a $4,000,000 fine and a term of supervised release of 5 years minimum".   At the sentencing hearing, the district court indicated that this statement was "probably a typographical error", because 10 years was the mandatory minimum; the Government agreed. Moreover, when testifying in support of his motion to withdraw the plea or for specific performance, Jackson acknowledged that, when he entered the plea, he understood that the maximum possible penalty was life imprisonment.

sentence which would be "capped at 10 years", and Jackson responded that he would prefer to receive "the cap at 10 years with the downward departure". After testimony by Jackson and his wife, the court sustained Jackson's motion "insofar as [Jackson's] interpretation of [the plea agreement] is concerned ... [that Jackson] be sentenced to 10 years". The court determined that Jackson's base offense level was 35, which included a three-level upward adjustment for his role in the offense and a two-level downward adjustment for acceptance of responsibility, with a guideline imprisonment range of 168 to 210 months.

The Government moved for a downward departure, pursuant to § 5K1.1, and the district court sentenced Jackson to 120 months imprisonment. Jackson did not object after the court imposed sentence.

## II.

Contending that his sentence should be vacated and the case remanded for resentencing, Jackson presents two bases in support: the district court erred by allegedly determining that it had no authority to depart below the mandatory minimum sentence; and it violated due process by not allowing him to present argument and evidence to refute the presentence report (PSR). But, he did not raise either issue in the district court; accordingly, the plain error standard of review applies.

Under that standard, we have discretion to correct errors that are plain ("clear" or "obvious") and affect substantial rights. *United States v. Olano*, 507 U.S. 725, ___, 113 S. Ct. 1770, 1777-79

(1993); *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir.) (en banc), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1266 (1995). And, in exercising that discretion, we "should correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings". *Olano*, 507 U.S. at ___, 113 S. Ct. at 1779 (internal quotation marks, brackets, and citation omitted).

A.

When the Government moves for a § 5K1.1 downward departure, the court is not bound to impose the sentence recommended by the Government, and it has the discretion to depart below the statutory mandatory minimum sentence. *See United States v. Alvarez*, 51 F.3d 36, 41 (5th Cir. 1995) ("although the Guidelines and the Sentencing Reform Act determine the validity of a district court's decision whether to depart, the decision as to the extent of the departure is committed to the almost complete discretion of the district court"); *United States v. Beckett*, 996 F.2d 70, 75 (5th Cir. 1993) (when prosecution moves for § 5K1.1 downward departure, based on defendant's substantial assistance, district court is authorized to depart below mandatory minimum sentence).

Jackson contends that the court misapplied § 5K1.1 because it erroneously considered itself bound by the statutory mandatory minimum sentence, as requested by the Government. *See United States v. Johnson*, 33 F.3d 8, 9-10 (5th Cir. 1994) (vacating sentences and remanding for resentencing where record left open the question whether the sentencing court, as a matter of policy, bound

itself to accept the Government's recommendation on downward departure).

On the other hand, the sentencing hearing transcript does not support this claim. After Jackson's counsel disputed Jackson's accountability for 24 kilograms of cocaine, the court stated, "[b]ut if he's sentenced for 10 years ... then it would become a moot issue"; Jackson's counsel agreed. The court then stated:

> I'm inclined to sentence him to 10 years. Now having told you that, do you wish to make an issue of the amount of the supervisory role that he played because I don't see that that would have any bearing on the issue at that point because there's a 10 year mandatory minimum in this case.

Jackson's counsel agreed: "I do concede and I concur with the Court that if that's the Court's position, 10 years, then yes, that would not be an issue". These comments were made before the Government moved for a downward departure. They do not reflect a misunderstanding about the court's discretion to depart below the mandatory minimum; instead, they reflect its belief, in which Jackson concurred, that adjustments to the sentencing range, which far exceeded 10 years, would be irrelevant if the court departed downward to a sentence of 10 years.

Jackson's counsel then requested a downward departure below 10 years, based on Jackson's diminished capacity, his health, and his substantial assistance to the Government. The following colloquy occurred:

> THE COURT: That would be something, Counselor, as I understand the memorandum of understanding, that may come later.

> [JACKSON'S COUNSEL]:  Yes, sir, I understand.
>
> THE COURT:  In the form of some motion.
>
> [JACKSON'S COUNSEL]:  Yes, sir, Judge.
>
> THE COURT:  Would not impact my sentence today.
>
> [JACKSON'S COUNSEL]:  I understand, Your Honor.

These comments reflect the court's understanding that, if a 10-year sentence were imposed, it could be reduced further, as the result of a motion pursuant to FED. R. CRIM. P. 35.  Jackson's counsel appears to have agreed with that understanding; in any event, there was neither an objection nor an attempt to clarify any misunderstanding.

None of the district court's comments at sentencing can be construed as indicating that it felt it lacked discretion to depart below the statutory mandatory minimum sentence requested by the Government.  Although the court did not state expressly that it had such authority, we will not infer otherwise from its silence.  Accordingly, this issue fails the very first step of plain error analysis -- that there be an error.

### B.

Jackson maintains also that the court violated his right to due process at sentencing when it suggested to counsel that any objections to the PSR would be irrelevant, and then later made specific fact findings without giving him an opportunity to rebut the PSR.  There is no plain error; the court did not prevent Jackson from presenting arguments or testimony in support of his

objections to the PSR.  Prior to ruling on Jackson's motion to withdraw his plea or for specific performance, the court asked Jackson if he wished to bring to its attention other matters pertaining to the PSR or that would impact sentencing.  Jackson's counsel responded:

> Judge, we stand by our notice of factual disputes with the PS[R] investigation.  We will stick on that and our memorandum that goes with it, Your Honor.

## III.

For the foregoing reasons, the judgment is

**AFFIRMED.**